# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHEENAH ARENZ, <br><br>  Plaintiff, <br><br> and <br><br> STATE OF WISCONSIN DEPARTMENT OF HEALTH SERVICES and UNITED HEALTHCARE, <br><br>  Involuntary Plaintiffs, <br><br> v. <br><br> INMATE SERVICES CORPORATION and MARIUS NESBY, <br><br>  Defendants. | Case No. 19-CV-949-JPS <br><br><br> **ORDER** |

      On June 28, 2019, Inmate Services Corporation ("Inmate Services") and Marius Nesby ("Nesby") (collectively, "Defendants") removed this civil rights action to federal court from Milwaukee County Circuit Court pursuant to 28 U.S.C. §§ 1332, 1441(b), & 1446. (Docket #1). Defendants' attorneys entered appearances (Docket #2) and proceeded to litigate the case. *See e.g.*, (Docket #10, #11, #14, #17). On April 3, 2020, Defendants' attorneys filed a motion to withdraw as counsel, (Docket #18), which the Court granted on May 1, 2020, (Docket #20), on the grounds that the attorney-client relationship had disintegrated to the point that the attorneys could no longer effectively represent their clients. The Court ordered Defendants to notify the Court of the names of their new counsel by June 1,

2020. (*Id.*) Defendants failed to do so. On June 2, 2020, Plaintiff's counsel filed a letter with the Court explaining that default judgment was appropriate in this case. On June 12, 2020, Plaintiff filed a motion for entry of default judgment, but neglected to request that the Clerk of Court enter default as required by Federal Rule of Civil Procedure 55(a). (Docket #27). The Court denied the motion for default judgment without prejudice. (Docket #30). Plaintiff then filed the request for entry of default, followed by a motion for default judgment. (Docket #31, #33). Defendants have not responded to the motion in any fashion, and the deadline for doing so has expired. *See* Civ. L.R. 7(b). As a result, the Court treats the motion as unopposed. Civ. L.R. 7(d). The facts pleaded in the complaint establish Defendants' liability for assault and battery, threat of false imprisonment, and failure to supervise, control, or train under Wisconsin state law. (Docket #1-1 at 5–8; Docket #15).[1]

Nevertheless, Plaintiff bears the responsibility to prove up her damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry to ascertain the amount in damages with reasonable certainty. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007)

---

[1] Plaintiff filed a piecemeal amended complaint, i.e., her "amended complaint" consists only of a third claim, which was not included in her initial complaint. Generally, this is not permitted. Civ. L.R. 15(a). However, Defendants, who were represented by counsel at the time, did not oppose or otherwise contest the fashion in which the amendment was made—rather, they timely filed an answer. In the interest of bringing this case to its logical conclusion, the Court will permit the piecemeal amendment in this instance.

(citations and quotations omitted). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (citations omitted).

Plaintiff seeks damages in the amount of $152,482.00. This breaks down to $102,482.00 in compensatory damages and $50,000.00 in punitive damages. In support of her prayer for compensatory damages, she has provided medical statements and bills as well as a transcript of her deposition testimony, in which she describes the circumstances of her case and the effects that it has on her. The Court summarizes the relevant deposition testimony, which bears on both compensatory and punitive damages, below.

Nesby, an employee of Inmate Services, was tasked with transporting Plaintiff from Arizona to Wisconsin. Throughout the trip, he had access to a gun; Plaintiff was in handcuffs and ankle-cuffs. Although there was a female Inmate Services employee present for part of the trip, on several occasions, Nesby managed to isolate Plaintiff from the rest of the transit group. He also insisted that she sit in the first row of the van, where he could touch her.

Nesby's advances began when he reached around his seat to rub her leg in the transit van, causing Plaintiff to shift her leg out of the way. (Docket #34-1 at 38:18–39:15). This happened twice. (*Id.* at #60:8–17). Next, he caressed her entire backside while she waited for the restroom; Plaintiff tried to get out of the situation by asking if she could use the bathroom. (*Id.* at 40:4–23). When Nesby told Plaintiff that he really liked her and asked her if she felt the same, she did not respond and walked back to the transit vehicle. (*Id.* at 41:7–10).

Despite these indications that Plaintiff was not interested in Nesby's advances, Nesby persisted in finding ways to be alone with Plaintiff and attempted to flirt with her and curry favor with her. (*Id.* at 43:8–44:4). She explained that Nesby would let her out of the van last, and, on one occasion, grabbed her arm to compliment her, asked her if she noticed that he kept her cuffs loose, and told her she could whisper food orders to him. (*Id.*) Plaintiff, beginning to feel extremely uncomfortable, told the other female inmate in transit about the unwanted advances and asked the other female not to leave her side. (*Id.*)

Later in the trip, while at a rest stop, Nesby, who had custody of Plaintiff's personal effects, found Plaintiff's phone number, sent her a text message, and then called her away from the group to give her access to her phone so she could confirm that the text message went through. (*Id.* at 46:6–47:10). During this exchange, he groped her buttocks and legs. (*Id.* at 47:12–24). Plaintiff told him that she felt uncomfortable and walked away. (*Id.* at 48:2–7).

After a curiously lengthy and circuitous trip from Arizona through California, Wyoming, and Utah, Nesby drove the transit van to Arkansas, ostensibly to swap drivers. While there, Nesby told the new driver that he, Nesby, was going to take Plaintiff into his office. (*Id.* at 50:1–4). The driver obliged and stayed in the van, while Nesby led Plaintiff indoors. (*Id.*) Plaintiff tried to extricate herself from the situation by using the restroom, but before she could go, Nesby pinned her against a counter, kissed, her, and groped her extensively under her clothes. (*Id.* at 50:16–51:9). Plaintiff again said she needed to use the bathroom, pushed him away, and stayed in the bathroom until she heard someone else enter the office. (*Id.* at 51:9–15). She emerged from the bathroom to see the second driver, who Nesby

Page 4 of 7
Case 2:19-cv-00949-JPS   Filed 01/10/22   Page 4 of 7   Document 36

had evidently told about the encounter. (*Id.* at 51:16–18). The second driver said, "you better never tell a soul about this." (*Id.* at 51:17–18). Shortly thereafter, Nesby pulled on Plaintiff's ponytail and threatened to hurt her if she told anybody about his assaults. (*Id.* at 59:18–60:3).

As a result of her experience with Defendants, Plaintiff suffers from serious anxiety. She receives counseling and medication but finds it difficult to leave her home alone to do common-place chores. *See e.g.* (*Id.* at 90:2–12). When she tried working as a housekeeper, she found herself scared to enter rooms alone for fear that someone would be waiting to corner and harass her. (*Id.* at 90:10–21). She typically stays at home, where she feels protected by her four security cameras. (*Id.* at 89:23–90:2).

Plaintiff's prayer for compensatory damages breaks down to $2,482.00 for medical and psychological treatment, for which she has provided medical statements (Docket #34-2–#34-4), and $100,000.00 in "general damages," which the Court infers are to compensate pain and suffering. "It is unquestioned that compensation includes out-of-pocket loss and other monetary harms, as well as personal humiliation, mental anguish and suffering." *Hagge v. Bauer*, 827 F.2d 101, 109 (7th Cir. 1987) (citation omitted). However, the "concern is actual, not imagined, damages," and such damages must be "supported with proof." *Id.* Additionally, compensatory damages must be "rationally connected" to a plaintiff's evidence of pain and suffering. *Hendrickson v. Cooper*, 589 F.3d 887, 892–93 (7th Cir. 2009). Nonetheless, there is no mathematical equation that will lead to the correct answer; these amounts can be "very difficult to quantify." *Id.* at 892. Courts should consider the totality of the circumstances in a case and may engage in comparisons with other cases; however, "such comparisons are rarely dispositive given the fact-specific

nature of damages claims." *Id.*; *see also Kelty v. Patterson*, 18-CV-762, 2019 WL 2417644, at *7 (E.D. Wis. June 10, 2019) (discussing compensatory damages awards in inmate sexual assault cases ranging from $200,000 to $1,700,000 depending on the facts of the case).

In this case, Plaintiff has provided testimony that she was routinely and progressively groped and harassed by her custodian, an employee of Inmate Services, while in transit across the country, which culminated in an incident where she was isolated in an office while Nesby kissed her and put his hands under her clothes. At least two employees knew of the behavior and did nothing to stop it. Plaintiff felt uncomfortable throughout the journey. When the ordeal was finished, Plaintiff found herself riddled with anxiety—she required medical and psychological intervention, and still will not leave the house by herself. When she tried working as a housekeeper, she found herself scared to enter rooms alone for fear that someone would be waiting to corner and harass her. She has implemented four security cameras around her home to make herself feel safer. Based upon these facts, the Court finds that $100,000.00 for pain and suffering is a rational award.

Punitive damages may be awarded when "the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure." *Hendrickson*, 589 F.3d at 894 (citations and quotations omitted). As with compensatory damages, it may be "useful to compare the . . . punitive damages award with other awards upheld in the past." *Id.* Other courts in this district routinely award punitive damages in situations where a correctional officer exploits his position of power or otherwise "abus[es] the trust placed in them by inmates and the public." *Kelty*, 2019 WL 2417644,

at *7 (discussing punitive damages awards in inmate sexual assault cases ranging from $250,000 to $5,000,000 depending on the facts of the case).

Plaintiff has provided deposition testimony in support of her allegations that Nesby, an armed employee of Inmate Services, took advantage of her vulnerable position as a handcuffed, ankle-cuffed, inmate-in-transit in order to grope her in progressively more humiliating ways, culminating in isolating her in his office where, despite her attempt to leave, he kissed her and put his hands under her clothes. Given the facts of this case, the Court finds that punitive damages in the amount of $50,000.00 is appropriate to punish the conduct at issue and deter similar behavior.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Docket #33) be and the same is hereby **GRANTED**; Defendants shall pay to Plaintiff the total sum of $152,482.00, which consists of the compensatory damages of $102,482.00, as well as punitive damages of $50,000.00, together with post-judgment interest as provided by law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of January, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge